UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|   |   |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EL CANAVERAL LLC and <br> ZEFERINO FIGUEROA, <br><br> Defendants. | Case No. 13-CV-1384-JPS <br><br><br> ORDER |

The plaintiff filed its complaint in this case on December 10, 2013, alleging that the defendants broadcast a sports program in a commercial establishment without the plaintiff's authorization, in violation of 47 U.S.C. §§ 553, 605. (Compl. ¶¶ 10–25). The plaintiff served the defendants on December 13, 2013, making the defendants answer due on January 3, 2014. (Docket #4, #5). The defendants did not timely appear or file an answer. Thus, on January 31, 2014, the plaintiff requested that the Clerk of Court enter default as to both defendants; the Clerk complied. (Docket #7).

This matter now comes before the Court on the plaintiff's motion for entry of default judgment against the defendants. (Docket #8). The plaintiff seeks $111,690.00 in total: $100,000.00 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii); $10,000.00 for a violation of 47 U.S.C. § 605(e)(3)(C)(i)(II); $1,250.00 in attorney fees; and $440.00 for costs incurred. (Docket #8, Ex. 1, at ¶ 7).

In support of its motion for default judgment, the plaintiff has proffered the affidavit of its attorney (Docket #8, Ex. 1); the rate card establishing its pricing system (Docket #8, Ex. 2); an affidavit from an investigator who was present when the defendants played the sports

program without authorization (Docket #8, Ex. 3); and a statement of the plaintiff's attorney's fees and costs. (Docket #8, Ex. 4).

Even with all of this information, the Court is obliged to conduct an appropriate inquiry into the plaintiff's claim for damages. Liability, of course, is not at issue; because the Clerk of Court has entered default against the defendant, the Court must accept all well-pleaded facts relating to liability as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1999)*; Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995). However, that does not relieve the plaintiff of the responsibility to prove up its damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004)). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983)).

The Court will, therefore, go further into depth in analyzing the defendant's claimed damages.

1. BACKGROUND

J&J Sports Productions, Inc. ("J&J") received contract rights to distribute the November 12, 2011, television broadcast of a boxing match between Manny Pacquiao and Juan Manuel Marquez. (Compl. ¶ 10). The

broadcast was to occur via closed circuit television and encrypted satellite signal, so as to ensure that any entity—including commercial entities like El Canaveral, a bar that is a defendant in this case—would have to pay a fee to be entitled to watch the broadcast. (Compl. ¶¶ 10–11). For example, a bar with minimum seating between 0 and 100 would have to pay $2,200.00 to show the broadcast of the match. (Docket #8, Ex. 2).

The defendants, however, broadcast the fight without paying the required fee to J&J. (Compl. ¶¶ 13–14). This act constitutes a violation of 47 U.S.C. §§ 553 and 605. (Compl. ¶¶ 19, 25).

J&J discovered the defendants' action by sending an investigator to El Canaveral on the night of the fight. (*See* Docket #8, Ex. 3). There, the investigator observed the fight being played on a projector screen. (Docket #8, Ex. 3). Approximately sixteen to eighteen patrons were present during this time, and the investigator estimated that the bar area could hold approximately fifty people. (Docket #8, Ex. 3).

2. RELEVANT STATUTES

J&J's complaint is based upon 47 U.S.C. §§ 553 and 605.

Section 553 governs the interception of cable television programming traveling over a cable network and gives the Court discretion to award between $250.00 and $10,000.00 in statutory damages for "all violations." 47 U.S.C. § 553; *United States v. Norris*, 88 F.3d 462, 468–69 (7th Cir. 1996). It also allows the maximum statutory award to be increased by up to $50,000.00 if a violation was committed willfully for commercial advantage. 47 U.S.C. § 553(c)(3)(B).

Section 605 governs the interception of programming as it travels through the air, *i.e.* by satellite, and allows for statutory damages ranging

from $1,000.00 to $10,000.00 for "each violation." 47 U.S.C. § 605; *Norris*, 88 F.3d at 468–69. The maximum penalty increases to $100,000.00 per violation if the violations were committed willfully for commercial advantage. 47 U.S.C. § 605(e)(3)(c)(ii).

The Court may reduce the statutory award under either section if it finds that the violation was innocent. *See* 47 U.S.C. §§ 553(c)(3)(C); 605(e)(3)(C)(iii).

3. APPLICATION OF STATUTES TO FACTS

J&J requests aggregate damages of $110,000.00, plus $1,690.00 in costs and attorney fees. (Docket #8, Ex. 1 at ¶ 7). Specifically, J&J seeks $100,000.00 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii), along with $10,000.00 for a violation of 47 U.S.C. § 605(e)(3)(C)(i)(II).

Thus, while J&J had originally complained that the defendants violated both § 553 and § 605, it seems that J&J now is seeking damages only under § 605. Rightly so: those two statutes target different types of piracy, and thus it would be inappropriate to award damages under both when only one form of broadcast—in this case satellite—is at issue. *See Norris*, 88 F.3d at 468.

By virtue of the defendants' default, the Court determines that they violated § 605, and the Court will consider J&J's request for damages under the provisions of § 605(e)(3)(C). *See J&J Sports Prods., Inc. v. Broadway Baby of Wisconsin*, No. 12-CV-405, 2013 WL 238850, at *2 (E.D. Wis. Jan. 22, 2013) (citing *Kingvision Pay-Per-View Ltd. v. Zalazar*, No. 06-CV-4441, 2009 WL 2482131, at *3 (S.D.N.Y. Aug. 13, 2009)).

My colleague, Judge Rudolph T. Randa, confronted an almost-identical situation last year. *See Broadway Baby*, 2013 WL 238850. He noted the

many approaches that courts may take in assessing damages under § 605: considering number of patrons present at the viewing of the broadcast and assigning a dollar value to each patron; awarding a flat sum for each violation; using a multiplier where there has been a willful violation. *Id.*, at *3 (citing numerous cases).

Ultimately, Judge Randa adopted a test set forth in *Joe Hand Promotions v. Ewer*, No. 09-CV-612, 2009 WL 3269658 (E.D. Wis. Oct. 8, 2009), which was widely used to calculate damages in instances in which the number of patrons is known. *Brodway Baby*, 2013 WL 238850, at *3 (citing *Ewer*, 2009 WL 3269658, at *3; *Joe Hand Promotions, Inc. v. Kaczmar*, No. 08-CV-2910, 2008 WL 4776365, at *2 (N.D. Ill. Oct. 29, 2008) (noting that, where the number of patrons is known, courts use that number as a baseline for calculating damages)). Specifically, Judge Randa in *Broadway Baby*, as well as the *Ewer* and *Kaczmar* courts, used a $55.00 per patron figure to calculate damages.

Here, applying a $55.00 per patron figure to the estimated maximum of 18 patrons in the bar, the Court would find a damage amount of only $990.00, far below the $2,200.00 that J&J would have charged the defendants. Thus, the court finds it most appropriate to hold that J&J's damages amount to $2,200.00: the amount it would have been paid if the defendants had contracted to show the boxing match.

But that does not end the damages calculation. The defendants acted willfully in showing the boxing match without authorization, and therefore damages for a willful violation are appropriate. To arrive at an enhanced damages calculation, courts may consider factors such as the number of violations, the defendant's illegal monetary gain, the plaintiff's actual damages, whether the defendant advertised the event, and whether the

defendant charged a cover to attend its showing of the event. *Broadway Baby*, 2013 WL 238850, at *4 (citing *Ewer*, 2009 WL 3269658, at *1; *Kaczmar*, 2008 WL 4776365, at *2). The Court should also consider the deterrent effects of an enhanced award and impose damages that discourage similar activity but that do not seriously impair the viability of the business. *Broadway Baby*, 2013 WL 238850, at *4 (citing *Ewer*, 2009 WL 3269658, at *1; *Kaczmar*, 2008 WL 4776365, at *2).

Here, a majority of the factors weigh against a high-dollar amount award. There was only one violation. There is no indication that the defendants advertised the event or charged a cover, and—given the sparse attendance—it does not seem likely that the defendant made a substantial amount of money. The plaintiff was damaged to the extent that it did not receive payment from the defendants for their showing the boxing match. The Court must also consider the deterrent effect of an award. Given these competing factors, the court ultimately concludes that it is best to follow Judge Randa's lead and assess a multiplier of three to the statutory damage award. *See Broadway Baby*, 2013 WL 238850, at *4. Thus, the enhanced damage award will be $6,600.00.

In sum, the total damage award is $8,800.00, comprised of $2,200.00 in statutory damages and $6,600.00 in enhanced damages.

Finally, the Court must assess attorney fees and costs, pursuant to 47 U.S.C. § 605(e)(3)(B). The plaintiff has requested attorney fees of $1,250.00, for five hours of work at $250.00 per hour, and costs of $440.00, comprised of the filing and service fees. (Docket #8, Ex. 1, at ¶ 7). These amounts are documented and sworn (Docket #8, Ex. 1, at ¶ 7(c); Docket #8, Ex. 4) and the

Court finds them reasonable. The Court will, therefore, grant the plaintiff's request for attorney fees and costs in the amount of $1,690.00.

For all of these reasons, the Court will grant the plaintiff's motion for a default judgment and will order that a default judgment be entered against the defendants, jointly and severally, in the amount of $8,800.00 in damages, plus $1,250.00 in attorney fees and $440.00 in costs.

Accordingly,

IT IS ORDERED that the plaintiff's motion for entry of default judgment (Docket #8) be and the same is hereby GRANTED in part, to the extent that the Court enters default judgment in the plaintiff's favor and awards it damages for the defendants' violation of 47 U.S.C. § 605, and DENIED in part, insofar as the Court refuses to grant the full amount of damages requested by the plaintiff;

IT IS FURTHER ORDERED that the defendants, jointly and severally, shall pay to the plaintiff the total amount of $10,490.00, comprised of $8,800.00 in damages, $1,250.00 in attorney fees, and $440.00 in costs; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The clerk of the court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of February, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge